IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PAMELA J. HILL,                              )
                                             )
                    Plaintiff                )        Civil No. 06-6167-CL
                                             )
          v.                                 )        FINDINGS AND
                                             )        RECOMMENDATION
MICHAEL J. ASTRUE,                           )
Commissioner of Social Security,             )
                                             )
                    Defendant.               )


KATHRYN TASSINARI
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

RICHARD A. MORRIS
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

          Attorneys for Defendant

CLARKE, Magistrate Judge:

Plaintiff Pamela J. Hill seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the Commissioner's decision be reversed and remanded for further proceedings.

## BACKGROUND

Born in 1965, Hill has a ninth-grade education. Tr. 74, 89.[1] Between 1990 and 1999 Hill reports work as a caretaker for her elderly grandmother. Tr. 84. Hill filed an application for DIB in July 2002, alleging disability since May 2001 due to sleep apnea, depression, and asthma. Tr. 74, 83.

Hill's application was denied initially and upon reconsideration. Tr. 47-54. On September 21, 2005, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 363-410. The ALJ subsequently found that Hill could perform significant work in the national economy and therefore found her not disabled. Tr. 15-23. The Appeals Council denied review of the ALJ's decision on May 22, 2006, making the ALJ's decision the final decision of the Commissioner. Tr. 6-8. Hill seeks review of this finding.

///

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer November 14, 2006 (Docket #10).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Hill challenges the ALJ's evaluation of the evidence and her conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity ("SGA"). If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, then she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv).

3 - FINDINGS AND RECOMMENDATION

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F.3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

At step two in the sequential proceedings, the ALJ found Hill's "obesity with sleep apnea, left knee early osteoarthritis, asthma, psoriasis, and mental impairments" severe.  Tr. 22.  The ALJ found that these impairments did not meet or equal a "listed" impairment at step three.  The ALJ assessed Hill's RFC:

> The claimant has the residual functional capacity for light work.  She is able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for a total of about six hours, and sit for a total of about six hours during an eight hour work day, with no prolonged sitting or standing, as she must change positions every hour.  She can do a job in which she never climbs ladders, ropes, or scaffolds, that does not involve heavy exercise or placing her hands in water.  She can work in an environment with no exposure to air pollutants, heat, or humidity.  With respect to the claimant's mental abilities, she can do simple one or two step tasks but not complex tasks.

Tr. 22-23.

At step four, the ALJ found Hill has no transferable skills from any past relevant work.

4 -  FINDINGS AND RECOMMENDATION

Tr. 23. At step five, the ALJ found that Hill's RFC allows her to perform a significant range of work in the national economy, including work as a garment sorter, eyeglass table worker, or merchandise marker. *Id.* The ALJ therefore found Hill not disabled at any time through the date of her decision. *Id.*

### STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court may weigh "both the evidence that supports and [that which] detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

### DISCUSSION

Hill contends that the ALJ improperly considered her obesity, improperly assessed her credibility, failed to consider a nurse practitioner's vocational opinion, and failed to adequately develop the record. Hill subsequently claims the ALJ made an erroneous step five finding based upon unsupported vocational testimony.

### I.    Obesity

Hill contends the ALJ failed to appropriately evaluate her obesity under the standards

5 - FINDINGS AND RECOMMENDATION

established by SSR 02-01p.  Pl. Opening Br. 16-18.

> The ALJ discussed Hill's obesity:

>> The claimant was repeatedly advised to lose weight and exercise
>> (See e.g., 12F/29).  Her primary care doctor noted in June 2005: "If
>> she wasn't so morbidly obese, she wouldn't have any of these
>> problems at all.  And in fairness to herself and others, she really
>> needs to take control of this" (16F/2; *see also* 17F/3).
>> Unfortunately, she did not lose a significant amount of weight as
>> her providers recommended (16F/6).  These conditions somewhat
>> limit her ability to do exertional activities.  The undersigned
>> therefore finds the claimant's obesity with sleep apnea is a severe
>> impairment.

Tr. 17.  The ALJ offered no further discussion of Hill's obesity, though she noted Hill's knee

impairment and sleep apnea.  Tr. 17.  The ALJ did not discuss Hill's asthma or cardiac condition,

nor did she consider the effect of Hill's obesity upon any of her impairments.  *Id.*

> **a.    Legal Standard**

SSR 02-01p provides guidelines for evaluating obesity in conjunction with impairments

listed in 20 C.F.R. subpart P, Appendix 1 ("the listings"). The SSR states:

>> Because there is no listing for obesity, we will find that an
>> individual with obesity "meets" the requirements of a listing if he
>> or she has another impairment that, by itself, meets the
>> requirements of a listing.  We will also find that a listing is met if
>> there is an impairment that, in combination with obesity, meets the
>> requirements of a listing.

 SSR 02-01p at *5.  In considering a claimant's obesity, the ALJ must articulate reasons for

finding that the claimant's obesity, in combination with her other impairments, does not meet a

listing.  *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

> An ALJ must also bear in mind that disability claimants are not required to lose weight as

this is "a task which is not equivalent to taking pills or following a prescription." *Hammock v. Bowen*, 879 F.2d 498, 503-04 (9th Cir. 1989) (en banc). Finally, admonitions by a physician that a claimant "should" lose weight do not constitute prescribed treatment. *Orn v. Astrue*, __ F.3d ____ (9th Cir. 2007), available at 2007 WL 2034287 at *10.

### b.    Analysis

The ALJ presently failed to meet the above standard. Such omission may be harmless if the record does not otherwise support obesity as an element of a claimant's impairment. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). This is not presently the case.

The record shows Hill's morbid obesity throughout the period in question. Tr. 277, 281, 288, 297, 299, 301, 310, 316, 320-21, 323-24, 326. The medical record also shows that Hill's obesity arises concurrently with her knee impairment, and abnormal cardiac findings, edema, and sleep apnea.

Hill demonstrated ongoing bilateral knee pain and dysfunction between June 2003 and March 2005, when the record closes. Tr. 275, 276, 316-20, 321. In August 2003 Hill's treating physician, Dr. Hindmarsh, noted that Hill's knees "have definitely been getting worse." Tr. 275. He assessed "bilateral knee pain secondary to probably osteoarthritis as well as morbid obesity and depression." *Id.* Between December 2004 and March 2005 Dr. Hindmarsh and his nurse practitioner additionally assessed left knee bursitis. Tr. 317, 321. A December 2004 MRI showed chondromalacia,[2] early osteophytes [bone spurs], possible degenerative fraying, and

---

[2] Chondromalacia is damage to the cartilage under the kneecap. *See* "The Mayo Clinic: Diseases and Conditions: Chondromalacia Patella," a*vailable at* http://www.mayoclinic.com/health/chondromalacia-patella/DS00777 (last visited July 16, 2007).

prominent red marrow.  Tr. 332.  At this time a nurse practitioner noted, "the knee probably will

not improve as long as she continues to carry 300 [plus] pounds."  Tr. 320.

Hill experienced falls secondary to her knee problems in January, March, and May 2005

Tr. 316-17, 319.  The ALJ failed to note this history, and specifically failed to note Hill's falls,

instead finding that a lay witness "had never actually seen the claimant fall."  Tr. 19.  The ALJ's

inference that Hill's falls are unsupported by the record should not be sustained.

The record also reflects Hill's abnormal cardiac functioning.  In February 2004 Hill

complained of chest pain.  Tr. 326.  Physicians subsequently assessed cardiac disease in June

2004.  Tr. 324-25.  Between June and September 2004 physicians additionally assessed

"exertional chest pain."  Tr. 322-24.  The record finally shows Hill's ongoing lower extremity

edema and sleep apnea throughout the period in question.  Tr. 275-77, 281-82, 284-85, 289.

In summary, while these portions of the record do not conclusively determine that Hill is

disabled, the ALJ failed to appropriately consider the effect of Hill's obesity upon her

functioning.  The ALJ should have discussed Hill's obesity under SSR 02-01p .  If she found that

Hill did not meet a listed disorder, the record clearly indicates that she should have included the

effects of Hill's obesity upon Hill's RFC.  The ALJ's emphasis upon Hill's failure to lose weight is

furthermore inappropriate.  *Hammock*, 879 F.2d at 503-04; *see* also *Orn*, 2007 WL 2034287 at

*9.

## II.    Credibility

Hill contends the ALJ failed to give "clear and convincing reasons" for rejecting her

testimony.  The Commissioner asserts that the ALJ performed an adequate credibility analysis

8 - FINDINGS AND RECOMMENDATION

first by citing discrepancies between Hill's testimony and the medical record and subsequently by citing Hill's work record.

### a.    Legal Standard

Once a claimant has shown an underlying impairment, absent a finding of malingering, the ALJ may not reject symptom testimony without specific findings showing clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ furthermore may not reject symptom testimony because the medical record does not corroborate the severity of the claimant's reported symptoms. *Id.* The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. If the ALJ's credibility decision is supported by the record, the reviewing court may not engage in second guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### b.    Analysis

Though the ALJ did not make a clearly identifiable credibility discussion, she cited four reasons for finding Hill not credible. First, she noted that Hill's physicians characterized her response during examination as "histrionic." Tr. 17. Second, the ALJ noted that Hill stopped working as her grandmother's caretaker because her grandmother died, rather than because of her

alleged impairment.  Tr. 18.  The ALJ concurrently noted in detail Hill's solicitation of "excuse notes" from her physicians to avoid work activity.  Tr. 18-19.  Third, the ALJ cited discrepancies between Hill's testimony and lay witness testimony.  Tr. 19-20.

### i.    Hill's Behavior in Examination

The record shows that Hill's physicians characterized her reaction to examination of her knees as "histrionic."  Tr. 275, 317.   An ALJ may consider physician testimony regarding the "nature, severity and effect" of the claimant's symptom testimony.  *Thomas*, 278 F.3d at 959 (quoting *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997)).   The ALJ's reference to this behavior is based upon the record and should be sustained.

### ii.    Hill's Work History

An ALJ may cite a claimant's poor work history in finding a claimant not credible.  *Thomas*, 278 F.3d at 959.  Here, the record supports the ALJ's finding that Hill did not cease working due to her alleged impairments.  Tr. 83.  The record also shows that Hill repeatedly sought "excuse notes" from physicians to avoid job search activity required in order to obtain unemployment benefits.  Tr. 273, 293, 324, 321, 319, 316-17.  The ALJ's inference that this behavior undermined Hill's credibility should be sustained.

### iii.    Lay Witness Testimony

The ALJ also cited contradictions between Hill's testimony and that of a lay witness, Cindy Miller.  Tr. 19-20.  Hill stated that she paid Miller to perform extra chores for her, but Miller stated that she did not receive money from Hill.  Tr. 380, 396.  The ALJ may note such a discrepancy in her findings.  *See Smolen*, 80 F.3d at 1284 (an ALJ may note inconsistent

statements by the claimant).

The ALJ also noted that Miller had never seen Hill fall. As noted, the medical record supports Hill's reports of falling. Tr. 316-17, 319. The ALJ may not rely upon lay witness testimony contradicted by the medical record. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 1995). The ALJ's reference to Miller's testimony regarding Hill's falls should not be sustained.

In summary, the ALJ provided adequate reasons for finding Hill not credible. The ALJ's citation to Hill's histrionic behavior in examination and her poor work history together amount to "clear and convincing reasons" for finding Hill not credible. Except as noted, the ALJ's credibility finding should be sustained.

## III.    The ALJ's Duty to Develop the Record

Hill also contends the ALJ failed to develop the record regarding her mental impairments. Pl. Opening Br. 14. The ALJ found Hill's "mental limitations" severe at step two in the sequential proceedings. Tr. 22. In making this finding, the ALJ discussed the assessment of examining psychiatrist Dr. Smolen:

> Consultative psychiatrist Dr. Smolen examined the claimant in July of 2001 and September 2002 (7F/1-7) . . . Dr. Smolen diagnosed the claimant with a major depressive disorder, recurrent, moderate, panic attacks without agoraphobia, and probable borderline intellectual functioning.

Tr. 17-18.

The ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ additionally has no duty to re-contact

11 - FINDINGS AND RECOMMENDATION

evaluating sources. *Thomas*, 278 F.3d at 958.

The record is sufficiently developed. Here, examining psychiatrist Dr. Smolen twice examined Hill at the request of Disability Determination Services.[3] Tr. 243-249. The records produced by Hill's treating physicians do not indicate further mental limitations, much less "mild retardation" as Hill suggests her special education history warrants. The ALJ found all of Hill's mental impairments severe at step two and additionally limited Hill to "simple one or two step tasks but not complex tasks." Tr. 22, 23. Hill fails to show that the medical record supports an ambiguity regarding mild retardation. Hill's submission that the ALJ failed to develop the record therefore fails.

**IV.    Medical Source Statements: Nurse Vanasche's Opinion**

Hill's only other challenge to the ALJ's evaluation of the medical evidence concerns a vocational opinion rendered by Nurse Practitioner Vanasche. Pl. Opening Br. 19. In September 2004 Vanasche noted that Hill should "limit her job search activities to sitting with light movement around the office." Tr. 322.

The ALJ considered this note, but found it inconsistent with treating physician Dr. Hindmarsh's opinion that Hill was disabled. Tr. 19. The ALJ also noted that reviewing physicians did not limit Hill to sedentary work.

Venasche's note does not establish that Vanasche expected Hill to be unable to perform any light level work, or that any restrictions would last twelve months or more. Furthermore,

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

vocational determinations are reserved for the Commissioner.  20 C.F.R. § 404.1527(e).  For

these reasons, the ALJ's review of Vanasche's September 2004 note should be sustained.

## V.    The ALJ's Step Five Finding

The record does not support the ALJ's assessment of Hill's obesity for the reasons above.

Therefore, the ALJ's residual functional capacity and subsequent questions to the vocational

expert at steps four and five of her decision are unsupported by the record.  The ALJ may not rely

upon unsupported vocational testimony.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir.

2001).  For this reason the ALJ's steps four and five determinations should not be sustained.

## REMAND

After finding the ALJ erred in her decision denying Hill's application for benefits, the

court must determine the proper remedy.  This court has discretion to remand for further

proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th

Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of

benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is not sufficient to

support the Commissioner's decision.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Further proceedings are necessary for the ALJ to properly consider Hill's obesity.  The

ALJ must then revise her RFC analysis accordingly and obtain additional vocational expert

testimony regarding Hill's workplace limitations.  The ALJ must subsequently make adequate

step four and five findings incorporating any properly supported limitations.

*///*

13 -  FINDINGS AND RECOMMENDATION

## <u>CONCLUSION AND RECOMMENDATION</u>

In conclusion, I find that the ALJ's evaluation of the medical evidence omits appropriate consideration of Hill's obesity.  The Commissioner's decision that Hill did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards or supported by substantial evidence.  The Commissioner's decision should be reversed and remanded for further proceedings consistent with these Findings and Recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

*Objections to this Report and Recommendation, if any, are due by August 10, 2007.  If objections are filed, any responses to the objections are due 14 days after the objections are filed*.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____27_____ day of July, 2007.


_____/s/_____
Mark D. Clarke
United States Magistrate Judge


14 -  FINDINGS AND RECOMMENDATION